FILED
JANUARY 23, 2008
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| TRUSTEES OF THE SOFT DRINK INDUSTRY - LOCAL UNION NO. 744 PENSION FUND, <br><br> Plaintiff, <br><br> v. <br><br> ROYAL CROWN BOTTLING COMPANY OF CHICAGO, a Delaware Corporation <br><br> Defendants. | ) ) ) ) ) ) Case No. ) Judge ) ) ) ) ) ) |

**08 C 502**

**JUDGE LEINENWEBER**
**MAGISTRATE JUDGE NOLAN**

### COMPLAINT

Plaintiffs, TRUSTEES OF THE SOFT DRINK INDUSTRY - LOCAL UNION NO. 744 PENSION FUND (hereinafter "Plaintiff" or "Pension Fund"), by and through their attorneys, Barry G. Collins, and Librado Arreola, of Asher, Gittler, Greenfield & D'Alba, Ltd., for their Complaint against Defendant, ROYAL CROWN BOTTLING COMPANY OF CHICAGO, a Delaware Corporation (hereinafter "Royal Crown"), and allege as follows:

### JURISDICTION AND VENUE

1. This is an action for declaratory relief pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, regarding the withdrawal liability, interest and penalties incurred by Royal Crown as a result of its withdrawal from a multiemployer pension plan, and for injunctive relief enjoining the Defendants.

2. This action is brought under the provisions of the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202 and the Employee Retirement Income Security Act of 1974 ("ERISA") as amended by the Multiemployer Pension Plan Amendment Acts of 1980, 29 U.S.C. §§ 1001-1461.

3. Jurisdiction in this Court is based upon Section 502(e), 502(f) and 4301(c) of ERISA, 29 U.S.C. §1132(e), 1132(f) and 1451(c).

4. Venue is proper in this Court pursuant to Sections 502(e)(2) and 4301(d) of ERISA, 29 U.S.C. § 1132(e)(2) and 1451(d), as the Pension Fund is located at 300 S. Ashland Blvd., Chicago, Illinois, and the Pension Fund is administered in the Northern District of Illinois.

## THE PARTIES

5. Plaintiffs are the Trustees of the Soft Drink Industry–Local Union No. 744 Pension Fund ("Pension Fund"), which is a multiemployer pension plan within the meaning of Section 3(37) and 4001(a)(3) of ERISA, 29 U.S.C. § 1002(37) and 1301(a)(3).

6. The present Trustees of the Pension Fund are the Plan Sponsor of the Pension Fund within the meaning of Section 4001(a)(10)(A), 29 U.S.C. § 1301(a)(10)(A).

7. Pursuant to Section 502(a)(3) and 4301(a)(1) of ERISA, 29 U.S.C. § 1132(a)(3) and 1451(a)(1), the Trustees are authorized to bring this action on behalf of the Pension Fund, its participants and beneficiaries for the purpose of collecting withdrawal liability.

8. Royal Crown is a Delaware corporation, it is an employer engaged in an industry affecting commerce and it has an office and operates and transacts business in Chicago, Illinois.

## FACTS

9. Royal Crown was subject to a Collective Bargaining Agreement ("CBA") executed with Teamsters Local Union No. 744.

10. Royal Crown was required to make contributions to the Pension Fund on behalf of certain of its employees pursuant to the CBA.

11. The funds contributed to the Pension Fund by Royal Crown are maintained and administered in accordance with and pursuant to the provisions of Section 302(c)(5) of the National Labor Relations Act, as amended, ERISA and other applicable Federal laws and the funds are administered pursuant to the terms and provisions of a certain Amended Agreement and Declaration of Trust ("Trust Agreement").

12. The CBA and the Trust Agreement required Royal Crown to submit contribution reports listing the hours worked by its bargaining unit employees (hereinafter referred to as "contribution reports") and to make concurrent payment of contributions to the Pension Fund based upon the hours worked by said employees.

13. As provided in the Trust Agreement, the Pension Fund is required to receive, hold and manage all monies required to be contributed to the Pension Fund in accordance with the provisions of the then applicable CBA for the uses and purposes set forth in the Trust Agreement.

14. Royal Crown ceased its business operations subject to the CBA in 2005 and began selling its assets.

15. During the plan year ending December 31, 2005, Royal Crown permanently ceased to have an obligation to contribute to the Pension Fund, thereby effecting a "complete withdrawal" as defined in Section 4203 of ERISA, 29 U.S.C. 1383.

16. As a result of this complete withdrawal, Royal Crown incurred "withdrawal liability" to the Pension Fund in the amount of $3,064,114.00, as determined under Section 4201(b) of ERISA, 29 U.S.C. 1381(b).

17. On about September 12, 2005, Royal Crown received a notice and demand for payment of withdrawal liability issued by the Pension Fund in accordance with Sections 4202(2) and 4219(b)(1) of ERISA, 29 U.S.C. 1382(2) and 1399(b)(1). (See Exhibit A.)

18. The September 12, 2005, notice from the Pension Fund notified Royal Crown that its withdrawal liability obligation could be discharged by a single lump sum payment of $3,064,114.00, or by eighty (80) quarterly payments of $64,749.00, beginning on September 30, 2005, with a final payment due on June 30, 2025. (See Exhibit A.) The eighty (80) quarterly payments over 20 years would result in a cumulative payment of $5,179,920.00.

19. On December 9, 2005, Royal Crown, through its counsel, requested review of the Pension Fund's withdrawal liability determination in accordance with Section 4219(b)(2)(A) of ERISA, 29 U.S.C. 1399(b)(1). (See Exhibit B.)

20. On May 22, 2006, the Pension Fund responded to Royal Crown's request for a review and advised Royal Crown that the Trustees of the Pension Fund had declined to reduce Royal Crown's withdrawal liability because Royal Crown had not provided documentation sufficient to support its position. (See Exhibit C.)

21. On June 27, 2006, Royal Crown provided the Pension Fund with additional financial information. (See Exhibit D.)

22. On November 6, 2006, the Pension Fund again advised Royal Crown that it would not make any adjustments to the withdrawal liability because Royal Crown had not provided documentation sufficient to support its position. (See Exhibit E.)

23. On January 4, 2007, Royal Crown submitted a request for arbitration of the withdrawal liability dispute to the American Arbitration Association ("AAA"). (See Exhibit F.)

24. On January 8, 2007, the Pension Fund responded to Royal Crown's request for arbitration, advising AAA and Royal Crown that Royal Crown's request to arbitrate the matter was untimely under Section 4221(a)(1) of ERISA, 29 U.S.C. 1401(a)(1). (See Exhibit G.)

25. On January 10, 2007, AAA sent the parties a letter acknowledging that it had received Royal Crown's request for arbitration on January 4, 2007, and provided the parties with a list of arbitrators. (See Exhibit H.)

26. On January 24, 2007, the Pension Fund advised AAA that Royal Crown's request to arbitrate was untimely and therefore the matter was not subject to arbitration. (See Exhibit I.)

27. On March 8, 2007, Royal Crown responded to the Pension Fund's letter of January 24, 2007, further pressing its opinion that the dispute regarding the timeliness of the request to arbitrate is a matter to be resolved by the arbitrator and not the courts. (See Exhibit J.)

28. On March 23, 2007, the Pension Fund responded to Royal Crown's March 8, 2007, letter and again advised AAA that Royal Crown's request to arbitrate was untimely and therefore the matter was not subject to arbitration. (See Exhibit K.)

29. In a letter dated March 27, 2007, AAA advised the Pension Fund that it had until April 6, 2007, to select an arbitrator and to raise the disputed issue before the arbitrator. (See Exhibit L.)

30. In a letter dated April 6, 2007, Royal Crown advised AAA that it wanted to stay the arbitral proceedings pending settlement discussion between the parties. (See Exhibit M.)

31. In a letter dated December 13, 2007, Royal Crown advised AAA that it intended to proceed with arbitration. (See Exhibit N.)

32. In a letter dated December 13, 2007, AAA advised the Pension Fund that the Pension Fund had until January 4, 2008, to select an arbitrator and to raise the disputed issue before the arbitrator. (See Exhibit N.)

33. In a letter dated January 8, 2008, AAA advised the Pension Fund that the Pension Fund now had until January 10, 2008, to select an arbitrator and to raise the disputed issue before the arbitrator. AAA advised that the Pension Fund's failure to select an arbitrator will result in a selection being made by AAA. (See Exhibit O.)

34. In a letter dated January 14, 2008, the Pension Fund advised AAA that, absent an agreement from Royal Crown to stay the selection of an arbitrator pending this action, the Pension Fund would include AAA as a Defendant in order to enjoin its arbitrator selection procedures. (See Exhibit P.)

35. On January 21, 2008, Royal Crown agreed to stay the arbitration selection procedures with AAA pending a ruling by this Court as to the arbitrability of this matter.

## COUNT I
## DECLARATORY RELIEF

36. Plaintiff restates and realleges paragraphs 1 through 35 above as paragraphs 36 through 70 of Count I.

71. By the actions set forth herein, Royal Crown is forcing the Pension Fund to arbitrate a claim that is not statutorily arbitrable.

72. Royal Crown's January 4, 2007, request for arbitration to AAA was untimely and any issues concerning its withdrawal liability are therefore not arbitrable.

73. Section 4221(a)(1) of ERISA, 29 U.S.C. 1401(a)(1), states:

> Any dispute between an employer and the plan sponsor of a multiemployer plan concerning a determination made under §§4201 through 4219 shall be resolved through arbitration. Either party may initiate the arbitration proceeding within a 60-day period afer the earlier of -
> (A) the date of notification to the employer under §4219(b)(2)(B), or
> (B) 120 days afer the date of the employer's request under §4219(b)(2)(A).

74. By the untimely filing of its demand to arbitrate the withdrawal liability issues, Royal Crown has waived any challenges it may have posed to the withdrawal liability assessed against it by the Pension Fund on September 12, 2005.

75. Royal Crown's December 13, 2007, request to AAA to proceed with the selection of an arbitrator and to proceed with the arbitration is forcing the Pension Fund to arbitrate a claim that is not statutorily arbitrable.

**WHEREFORE**, Plaintiff Pension Fund prays for the following relief:

A. That this Court issue a Declaratory Ruling finding that Royal Crown's January 4, 2007, request to the American Arbitration Association, Inc., to arbitrate the withdrawal liability issue was untimely pursuant to Section 4221(a)(1) of ERISA, 29 U.S.C. 1401(a)(1);

B. That this Court issue a Declaratory Ruling finding that Royal Crown's objections to the withdrawal liability assessment made by the Pension Fund have been waived by virtue of Royal Crown's failure to timely file for arbitration;

C. That this Court issue a Declaratory Ruling and enjoin Royal Crown from proceeding to arbitration or any other challenge of the withdrawal liability assessed against it by the Pension Fund on September 12, 2005;

D. That the Court award Plaintiff its attorney fees and costs pursuant to 29 U.S.C. 1451(e); and

E. For any equitable or other relief found to be just and proper.

## COUNT II
## INJUNCTIVE RELIEF

76. Plaintiff restates and realleges paragraphs 1 through 35 above as paragraphs 76 through 110 of Count II.

111. Royal Crown has closed its operations and has sold most of its assets.

112. Royal Crown is presently in the process of selling some remaining real estate assets and other assets.

113. The sale of Royal Crown's remaining assets is expected to generate money estimated at several million dollars.

114. Royal Crown's financial disclosures to the Pension Fund during the Section 4219 (29 U.S.C. 1399) review process show that it does not presently have sufficient liquid assets to pay the outstanding withdrawal liability obligation.

115. Due to the large amount of withdrawal liability owed by Royal Crown, the Pension Fund will be irreparably harmed if the money is not recovered.

116. The Pension Fund has a strong likelihood of succeeding on the merits of this action, as Royal Crown has waived any challenge to the amount of the withdrawal liability assessed against it by failing to timely file for arbitration.

117. In order to guarantee that sufficient funds are available to meet future installment payments when due, the Pension Fund asks that a constructive trust be ordered and that the sum of $4,532,430.00 be segregated from the total proceeds generated from the sale of Royal Crown's assets and that such sum be placed in an escrow account for the exclusive purpose of payment of the withdrawal liability owed to the Pension Fund. The sum of $4,532,430.00 represents the

total quarterly installments due, $5,179,920.00, less $647,490.00 in withdrawal liability installment payments made to date.

118. The Pension Fund does not seek to disrupt Royal Crown's sale of its assets nor does the Pension Fund seek a lump sum payment of the withdrawal liability.

119. The harm to the Pension Fund outweighs any harm to Royal Crown if the preliminary injunction is not granted, as establishment of a constructive trust does not work a hardship upon Royal Crown.

120. The Pension Fund seeks to avoid a future default by Royal Crown with the imposition of a constructive trust.

121. It is in the public interest to preserve and protect the assets of the Pension Plan in order to avoid a shortfall in the Plan's funding, which would occur in the event of a default by Royal Crown, and ERISA Sections 502(a)(3) and 4301(a)(1) (U.S.C. 29 1132(a)(3) and 1451(a)(1)) specifically contemplate the use of equitable relief, such as a constructive trust.

122. A preliminary injunction is in the public interest as any interest income generated or accrued during the period of the imposition of a constructive trust and the final installment payment to the Pension Fund will remain the property of Royal Crown, as the quarterly withdrawal liability payments have been calculated to include interest owed to the Pension Fund.

123. The Pension Fund has no adequate remedy at law to preserve or protect dissipation after the sale of all the assets belonging to Royal Crown, as Royal Crown is no longer in business and will not generate any operational income.

124. The Pension Fund has no adequate remedy at law to preserve or protect dissipation as Royal Crown is a "C" corporation, whose shares are owned by members of several families and their related family trusts.

125. The amount of withdrawal liability is a substantial amount of money and the Pension Fund's Trustees have a fiduciary responsibility imposed by law to take all steps to preserve the pool of assets to assure payment of the benefits of the Plan's participants.

WHEREFORE, Plaintiff Pension Fund prays for the following relief:

A. That this Court direct Royal Crown to segregate the sum of $4,532,430.00 from the proceeds of any previous and future sales of Royal Crown's assets, into a constructive trust;

B. That this Court direct that the above proceeds be held in a constructive trust by the Clerk of the U.S. District Court of the Northern District of Illinois pursuant to FRCP 67 in the form of an interest bearing escrow account at a local banking institution that is agreeable to the Pension Fund and Royal Crown;

C. That this Court direct that the above proceeds be held in trust for the benefit of the SOFT DRINK INDUSTRY - LOCAL UNION NO. 744 PENSION FUND and for the exclusive purpose of paying quarterly withdrawal liability payments of Royal Crown to the Plaintiff Pension Fund as they become due, and for no other purpose;

D. That this Court issue a writ of attachment or sequestration against Royal Crown's property;

E. That this Court enter a judgment divesting title of Royal Crown and vesting title upon Plaintiff Pension Fund of Royal Crown's property in the amount of $4,532,430.00;

F. That this Court retain jurisdiction of the case pending compliance with this Court's Order and for the duration of the installment program;

G. That this Court award Plaintiff its attorney fees and costs pursuant to 29 U.S.C. 1451(e); and

H. For any equitable or other relief found to be just and proper.

                          Trustees of the Soft Drink Industry–Local Union No. 744 Pension Fund

                          Respectfully submitted,

By: /s/Librado Arreola
ASHER, GITTLER, GREENFIELD & D'ALBA, LTD.
200 W. Jackson Blvd., Suite 1900
Chicago, IL 60606
(312) 263-1500
ILARDC #6203323
Attorney for Plaintiff

Librado Arreola
Barry G. Collins
ASHER, GITTLER, GREENFIELD
& D'ALBA, LTD.
200 W. Jackson Blvd., Suite 1900
Chicago, IL 60606
(312) 263-1500

11