**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| TRUSTEES OF THE SOFT DRINK INDUSTRY - LOCAL UNION NO. 744 PENSION FUND, )))) | |
| Plaintiff, ) | Case No. 08 C 502 |
| v. ) | Judge Leinenweber |
| ROYAL CROWN BOTTLING COMPANY OF CHICAGO, a Delaware Corporation, ))) | Magistrate Judge Nolan |
| Defendant. )) | |

**ROYAL CROWN'S MEMORANDUM OF LAW IN SUPPORT OF ITS
MOTION TO DISMISS COUNT II OF PLAINTIFF'S COMPLAINT**

Royal Crown Bottling Company of Chicago ("Defendant" or "Royal Crown"), through undersigned counsel, submits this memorandum of law in support of its Motion to Dismiss Count II of Plaintiff's Complaint.

## INTRODUCTION

Count II of Plaintiff's Complaint seeks to impose a constructive trust in favor of the Pension Fund for a sum of $4,532,430.00 to pay Royal Crown's alleged future withdrawal liability payments.

There is absolutely no legal basis for this Court to impose such an equitable remedy. Royal Crown has made all timely withdrawal liability payments to the Pension Fund, and the Pension Fund has no "good conscience" claim to the property over which it seeks to assert a constructive trust. Indeed, Count II of the Pension Fund's claim is nothing more than a blatant attempt to leapfrog Royal Crown's other potential creditors. The Pension Fund, however, has no

CH1 11435829.1

right – legal, equitable, or otherwise – to do so.  As such, Count II of Plaintiff's Complaint should be dismissed for failure to state a claim upon which relief can be granted.

## STATEMENT OF FACTS[1]

**A.     Plaintiff's Allegations**

Royal Crown was subject to a Collective Bargaining Agreement ("CBA") with Teamsters Local Union No. 744, which required Royal Crown to make pension contributions to the Soft Drink Industry – Local Union No. 744 Pension Fund ("Plaintiff" or "Pension Fund") on behalf of certain of its employees.  Compl. ¶¶ 9, 10.  Royal Crown ceased its business operations in 2005, terminated its obligation to contribute to the Pension Fund, and thereby effected a "complete withdrawal" as defined under Section 4203 of ERISA, 29 U.S.C. §1383.  Compl. ¶¶ 14, 15.  As a result, on about September 12, 2005, the Pension Fund assessed Royal Crown $3,064,114.00 in withdrawal liability.  Compl. ¶¶ 16, 17.  The Pension Fund's assessment permitted Royal Crown to either pay the Pension Fund one lump sum payment of $3,064,114.00, or make quarterly payments of $64,749.00 beginning September 30, 2005, with a final payment due on June 30, 2025.  Compl. ¶ 18.  Although Royal Crown has challenged the amount of this assessment through internal proceedings at the Pension Fund and in arbitration (which is the subject of Count I of the lawsuit), Royal Crown chose the payment plan and has made timely quarterly payments to the Pension Fund totaling $647,490.00 to date.  Compl. ¶ 117; *see also* Compl. Att. G, p. 2.  Thus, according to the Pension Fund's January 8, 2007 letter to Royal Crown, "[a]s long as RC continues to [make timely quarterly payments], the Pension Fund cannot and need not take action."  See Compl. Att. G, p. 2.

---

[1] The facts stated herein are derived from the Complaint.  Inclusion of any statement herein is solely for purposes of this motion and is not an admission to the truth of the allegations asserted.

**B.      Procedural History**

Despite having received timely quarterly payments in accordance with its September 12, 2005 withdrawal liability assessment and the Pension Fund's representation to Royal Crown that it "cannot take action" if Royal Crown continues to make timely quarterly payments, the Pension Fund filed a two-count Complaint on January 23, 2008. Count II of Plaintiff's Complaint, contrary to the Pension Fund's prior assertions to Royal Crown, asks the Court to create a constructive trust for a sum of $4,532,430.00 to pay Royal Crown's future quarterly payments. Compl. ¶¶ 76-125. More specifically, Count II of Plaintiff's Complaint asks this Court to: (1) segregate the sum of $4,532,430.00 from the proceeds of any previous and future sales of Royal Crown's assets into a constructive trust; (2) direct the Clerk to hold proceeds pursuant to Fed. R. Civ. P. 67; (3) order the proceeds be held for the benefit of the Pension Fund to pay Royal Crown's quarterly withdrawal liability payments; (4) issue a writ of sequestration against Royal Crown's property; (5) enter judgment divesting title of Royal Crown's property and vesting title upon the Pension Fund in the amount of $4,532,430.00; and (6) retain jurisdiction over the case pending compliance this Court's order. Compl. p. 10.

On February 19, 2008, Royal Crown sent the Pension Fund a letter explaining that the Pension Fund had no legal basis to assert a constructive trust in this case. *See* Exhibit A. Royal Crown's letter afforded the Pension Fund an opportunity to either withdraw Count II or provide Royal Crown with adequate legal support and explanation for the rights and theories advanced in Count II. *See* Exhibit A. The Pension Fund responded to Royal Crown on February 28, 2008. *See* Exhibit B. The Pension Fund refused to withdraw Count II and directed Royal Crown to the unpublished district court temporary restraining order ("TRO") granted in *Trustees of the Suburban Teamsters of Northern Illinois Pension Fund v. Harry W. Kuhn, Inc. et al*, 05 C 1343

(N.D. Ill. Mar. 30, 2005), as the sole legal support for maintaining Count II of its Complaint. *See* Exhibit B.

As explained more fully below, *Harry W. Kuhn, Inc.* is inapposite to the facts of this case because, *inter alia*, Royal Crown has made timely quarterly payments to the Pension Fund. Further, there is absolutely no factual or legal support entitling the Pension Fund to the relief sought in Count II of the Complaint. Count II must therefore be dismissed for failure to state a claim upon which relief can be granted.

## ARGUMENT

As explained in *Admin. Comm. of the Wal-Mart Stores, Inc. v. Varco*, 338 F.3d 680, 687 (7th Cir. 2003), a plaintiff may only seek a constructive trust where:

> …money or property identified as belonging in good conscience to the plaintiff [can] clearly be traced to particular funds or property in the defendant's possession. A court of equity [can] then order a defendant to transfer title (in the case of the constructive trust) or to give a security interest (in the case of the equitable lien) to a plaintiff who [is], in the eyes of equity, the true owner. But where the property sought to be recovered or its proceeds have been dissipated so that no product remains, the plaintiff's claim is only that of a general creditor, and the plaintiff cannot enforce a constructive trust of or an equitable lien upon other property of the defendant. . . .Thus, for restitution to lie in equity, the action generally must seek not to impose personal liability on the defendant, but to restore to the plaintiff particular funds or property in the defendant's possession."

*Id.*, *quoting in part, Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 213-14 (other citations omitted). Furthermore, as this Court has held:

> A constructive trust is imposed by the courts to prevent unjust enrichment where a party receives property or money which, in equity, it should not be entitled to keep. A constructive trust will not be imposed, however, unless the complainant makes specific allegations of wrongdoing…such as fraud, breach of fiduciary duty, duress, coercion or mistake. Furthermore, the grounds for imposing a constructive trust must be so clear, convincing, strong and unequivocal as to lead to but one conclusion.

*Weinstein v. Carrane*, No. 90 C 1190, 1991 U.S. Dist. LEXIS 16427, at *11 (N.D. Ill. Nov. 6, 1991) (Judge Harry D. Leinenweber) (attached as Exhibit C).

The Pension Fund cannot sustain Count II of its Complaint. The Pension Fund has no conceivable, let alone "good conscience," claim to the property over which it seeks to assert a constructive trust. Indeed, the Pension Fund has not identified any special claim to the specific assets at issue. To the contrary, these assets are admittedly Royal Crown's property and Plaintiff simply wants to obtain title to them. Moreover, creating a constructive trust in this case prevents no issue of "unjust enrichment" because Royal Crown has made all of its quarterly withdrawal liability payments. And, not only has Royal Crown engaged in no "wrong doing," but it also has fulfilled all of its legal obligations to the Pension Fund. Thus, the Pension Fund merely speculates that at some future date Royal Crown may not make a timely quarterly payment. Such allegations are insufficient to raise a viable claim for creation of a constructive trust. *See Weinstein*, 1991 U.S. Dist. LEXIS 16427, at *11; *Varco*, 338 F.3d at 687. Therefore, Count II of the Complaint should be dismissed.

Plaintiff has referred Royal Crown to *Harry W. Kuhn, Inc.*, which in turn cites *Galgay v. Beaverbrook Coal Co.*, 105 F.3d 137, 141 (3d Cir. 1997), as the sole legal authority supporting its claim for establishment of a constructive trust. In *Harry W. Kuhn, Inc.*, after the company lied to the union about its intent to close its facility and an impending auction of all of its equipment, and refused to make a withdrawal liability payment, the pension fund moved for a TRO and asked the court to establish a constructive trust over the proceeds of an impending liquidation auction. The court granted the pension fund's request, determining that the pension fund demonstrated that temporary injunctive relief was appropriate and that it faced the threat of irreparable harm if the company evaded its interim withdrawal liability payment obligations.

Similarly, in *Galgay*, the Third Circuit overturned the lower court's decision rejecting a pension fund's request for a preliminary injunction. There, once again, the company refused to make interim withdrawal liability payments as required under ERISA. The Third Circuit held that a preliminary injunction ordering the company to pay interim withdrawal liability payments was appropriate because the pension fund demonstrated that "withdrawal liability was assessed, [the company] was notified and payments were not made." *Galgay*, 105 F.3d at 141.

Both *Harry W. Kuhn, Inc.* and *Galgay* are wholly inapposite to the facts of this case. In both cases the employers were delinquent to the pension fund – they failed to make timely interim withdrawal liability payments as assessed by the funds and as required by ERISA. Thus, both employers breached ERISA's most basic axiom: "pay now, dispute later." *See Harry W. Kuhn, Inc.*, 05 C 1343, p.2; *Galgay*, 105 F.3d at 142; *see also Bay Area Laundry & Dry Cleaning Pension Trust Fund v. Ferbar Corp.*, 522 U.S. 192, 200-01 (1997) ("A plan cannot maintain an action until the employer misses a scheduled withdrawal liability payment"). In sharp contrast, Royal Crown has made each quarterly payment on time, and to date has paid the Fund $647,490.00. Compl. ¶ 117; *see also* Compl. Att. G, p. 2. Thus, the Pension Fund has suffered no damage, unlike the funds in both *Harry W. Kuhn, Inc.* and *Galgay*.

Furthermore, *Harry W. Kuhn, Inc.* contains no substantive discussion or analysis of why a constructive trust was appropriate in that case. Rather, the Court merely granted a TRO as the pension fund demonstrated that it would face irreparable harm and that it would later prevail on the merits.[2] Decisions granting TRO's, however, are not final adjudications on the merits, nor actual rulings, and are therefore entitled to no precedential value. *See Ocampo De Kalb, LLC v.*

---

[2] The parties later settled the case and the Court issued no further rulings on the appropriateness of the pension fund's constructive trust.

*GMAC Commer. Mortg. Corp.*, 169 F. Supp. 2d 810, 814 (N.D. Ill. 2001). *Galgay*, on the other hand, is not even a constructive trust case; it merely stands for the proposition that a pension fund may be entitled to injunctive relief *if* a withdrawn employer refuses to make interim payments. Those are not the facts of this case. As such, the Pension Fund cannot establish any of the traditional prerequisites to the creation of a constructive trust, as Royal Crown has done absolutely nothing wrong and the Pension Fund has no good conscience claim to Royal Crown's property.

In sum, the Pension Fund has no basis for the relief sought in Count II of its Complaint. If anything, the Pension Fund's allegations are nothing more than a blatant attempt to gain an unfair and unwarranted preference over Royal Crown's other potential creditors. The Pension Fund, however, has no right to leverage its withdrawal liability assessment against the rights of other potential creditors. Rather, the Pension Fund simply is another general creditor and its right to interim withdrawal liability payments is entitled to no special priority. *See*, *e.g.*, *Trustees of Amalgamated Ins. Fund v. McFarlin's, Inc.*, 789 F.2d 98, 104 (2d Cir. 1986) (holding that in bankruptcy proceedings, withdrawal liability payments were entitled to no priority). As such, Count II of the Complaint should be dismissed.

## CONCLUSION

For the reasons stated above, Defendant Royal Crown requests that Count II of the Complaint be dismissed with prejudice, and requests such other relief as may be proper.

**DATED: March 24, 2008**　　　　　　　　　Respectfully submitted,

　　　　　　　　　　　　　　　　　　　　ROYAL CROWN BOTTLING
　　　　　　　　　　　　　　　　　　　　COMPANY OF CHICAGO


　　　　　　　　　　　　　　　　　　　　By:　/s/　　　Colin M. Connor
　　　　　　　　　　　　　　　　　　　　　　　　One of Its Attorneys

Joel H. Kaplan
Marc. R. Jacobs
Colin M. Connor
SEYFARTH SHAW LLP
131 South Dearborn Street
Suite 2400
Chicago, Illinois 60603
(312) 460-5000

## **CERTIFICATE OF SERVICE**

I, Colin M. Connor, an attorney, do hereby certify that I have caused a true and correct copy of the foregoing MEMORANDUM IN SUPPORT OF ROYAL CROWN'S MOTION TO DISMISS COUNT II OF PLAINTIFF'S COMPLAINT to be served upon the following counsel of record on March 24, 2008 through the Court's electronic filing system:

>Librado Arreola
>Barry G. Collins
>Asher, Gittler, Greenfield & D'Alba, Ltd.
>200 W. Jackson Blvd., Suite 1900
>Chicago, Illinois 60606

/s/   Colin M. Connor