# Exhibit B

LAW OFFICES

## ASHER, GITTLER, GREENFIELD & D'ALBA, LTD.

SUITE 1900
200 WEST JACKSON BOULEVARD
CHICAGO, ILLINOIS 60606

February 28, 2008

TELEPHONE (312) 263-1500
FACSIMILE (312) 263-1520
E-MAIL  firm@ulaw.com

Writer's Direct E-Mail:
la@ulaw.com



Marc R. Jacobs, Esq.
Seyfarth Shaw LLP
131 S. Dearborn St., Suite 2400
Chicago, IL  60603-5577

Re:  Trustees of the Soft Drink Industry - Local Union No. 744 Pension Fund v.
Royal Crown Bottling Company of Chicago
Case No. 08 C 502

Dear Mr. Jacobs:

This is in response to your letter of February 19, 2008.  The Trustees have a fiduciary obligation to ensure that the Fund is paid and must therefore pursue all options to that end.  Although you state that the Fund has no basis to assert an equitable trust in this case as there is no identifiable money or property of which the Trust is the true owner, I direct your attention to the case, *Trustees of the Suburban Teamsters of Norther Illinois Pension Fund v. Harry W. Kuhn, Inc. et al*, 05 C 1343 (N.D. IL 2005), which is enclosed.  There, the court imposed a constructive trust in circumstances similar to this case. I believe the Fund has a supportable and "good conscience" claim to property of Royal Crown.  Therefore, we will not withdraw Count II of the complaint.

Feel free to call me if you have any questions or if you wish to discuss this matter further.

Sincerely,

Librado Arreola

Encl.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| TRUSTEES OF THE SUBURBAN TEAMSTERS OF NORTHERN ILLINOIS PENSION FUND, )<br><br>Plaintiffs, )<br><br>v. )<br><br>HARRY W. KUHN, INC., an Illinois corporation; )<br>R & K CARTAGE, INC., an Illinois corporation; and )<br>PILLAR ROCK VINEYARD, )<br><br>Defendants. ) | No. 05 C 1343<br><br>Judge John W. Darrah |

### TEMPORARY RESTRAINING ORDER

Plaintiffs, Trustees of the Suburban Teamsters of Northern Illinois Pension Fund, seek the establishment of a constructive trust from the March 31, 2005 auction proceeds in the amount of $1,597,531.00 to guarantee the prompt and timely payment of pension withdrawal liability installments.

In late December 2004, Teamsters 673 wrote to Harry W. Kuhn, Inc. and R & K Cartage, Inc. ("Defendants"), seeking information regarding rumors of a plant closure or sale. On January 7, 2005, Defendants responded that there was no information in that regard and that the recent layoffs were seasonal. On January 31, 2005, Defendants sent Teamsters 673 a Worker Adjustment and Retraining Notification ("WARN") notice letter, stating that Defendants expected to permanently close the plants on April 1, 2005. Defendants did not make any inquiry of the Plaintiffs as to the existence of withdrawal liability prior to its decision to close the plants. On February 21, 2005, an auction house posted on its website information concerning a March 31, 2005 auction of all of Defendants' equipment.

On February 24, 2005, Plaintiffs issued a notice and demand for withdrawal liability on Defendants. The notice and attached payment schedule informed the Defendants of the amounts required to discharge each of their pension withdrawal liability in quarterly installments. The initial installment payments were due on March 1, 2005. On March 2, 2005, after the installment payments were not received, Plaintiffs sent Defendants a past-due notice and a demand for payment. No payments have been received.

The Employee Retirement Income Security Act of 1974 ("ERISA"), as amended by the Multi-Employer Pension Fund Amendments Act of 1980 ("MPFAA"), 29 U.S.C. § 1001 *et seq.*, imposes withdrawal liability on an employer withdrawing from the multi-employer pension plan. *See* 29 U.S.C. §§ 1381, 1391. These payments ensure that an employer does not leave a plan with vested pension obligations that are only partially funded. *See Central States, Southeast & Southwest Areas Pension Fund v. Bomar Nat., Inc.*, 253 F.3d 1001, 1014 (7th Cir. 2001) (*Bomar*). To collect withdrawal liability, a pension fund must determine the amount of withdrawal liability and send the employer notice and demand for payment for that amount. *See* 29 U.S.C. §§ 1382, 1391, 1399(b)(1). If the employer disagrees with the assessment of withdrawal liability, it may ask the plan to review its assessment and then may initiate arbitration. *See* 29 U.S.C. §§ 1399(b)(2), 1401(a)(1). The initiation of arbitration does not suspend the employer's obligation to pay in accordance with the schedule of payments assessed by the plan. The employer must "pay now, dispute later." *See Bomar*, 253 F.3d at 1015. This provision serves the dual purpose of reducing the risk that an employer will not pay in furtherance of the MPFAA's purpose and encouraging speedy adjudication by requiring immediate arbitration before the courts become involved in the merits of the dispute. *See Bomar*, 253 F.3d at 1015.

A temporary restraining order may be entered based on an analysis of: (1) the threat of irreparable harm to the moving party, (2) the possible injury to the opposing party, (3) the likelihood of success by the movant on the merits of the claim, and (4) public policy considerations. *See Gould v. Lambert Excavating*, 170 F.2d 1214, 1217 (7th Cir. 1989).

Plaintiffs move for the establishment of a constructive trust in the amount of the assessed withdrawal liability based on Defendants' expected cessation of business and auction of all of their equipment on March 31, 2005, in connection with the closure of the businesses.

Defendants argue against the issuance of a constructive trust, contending that a complete withdrawal had not yet taken place. However, whether and when there has been a withdrawal is part of the merits of the claim, which, pursuant to the MPFAA, must be resolved in arbitration. *See Bomar*, 253 F.3d at 1015.

Defendants also argue that they have sixty days from March 2, 2005, to make the required payments; therefore, Plaintiffs' motion is premature. However, injunctive relief may be granted to insure the payment of withdrawal liability. *See Galgay v. Beaverbrook Coal Co.*, 105 F.3d 137, 141 (3rd Cir. 1997) (*Galgay*) (district court erred in denying injunctive relief for payment of interim withdrawal liability while the parties arbitrated liability).

The Court finds as follows: Plaintiffs have demonstrated the threat of irreparable harm in light of the expected closure of the Defendants' businesses and the sale of their assets and the possibility that the funds needed to make the withdrawal liability payments may be dissipated by the time such funds are due. The threat of injury to Defendants is minimal as Defendants are required to pay now and arbitrate later. Based on the pleadings before the Court, Plaintiffs are likely to prevail on the merits. Lastly, as demonstrated by the pay-now-and-arbitrate-later provision, public

policy weighs in favor of granting injunctive relief. The possible dissipation of the funds and the resulting inability to pay the withdrawal liability payments is contrary to, and frustrates, the purpose of the MPFAA. *See Galgay*, 105 F.3d at 140 (withdrawal liability provisions and judicial mechanisms for their enforcement demonstrate that Congress has concluded that the uninterrupted flow of payments is important in itself and that the ultimate recovery of payments is not sufficient to make a fund whole, and the likelihood of success is not really relevant because interim payments must be made regardless).

Based on the above, Plaintiffs have demonstrated that injunctive relief is appropriate. The Defendants are ordered to make all quarterly pension withdrawal payments when they become due. To guarantee the prompt and timely payment of pension withdrawal liability installments when they become due, a constructive trust is established and imposed on the March 31, 2005 auction proceeds in the amount of $1,597,531.00.

It is therefore ordered that a temporary restraining order with notice shall issue enjoining the Defendants from collecting or otherwise obtaining use of or control over or transferring any of the proceeds of the sale of Defendants' assets in the amount of $1,597,531.00 These funds are to be paid by Defendants into an interest-bearing account and held in escrow by a bank for the benefit of the Plaintiffs until further order of the Court. The matter is continued to April 5, 2005, at 9:00 a.m. for presentation of Defendants' Motion to Dismiss and setting for hearing on the issuance of a preliminary injunction.

Dated: March 30, 2005

JOHN W. DARRAH
United States District Judge

4