# Exhibit C

LEXSEE 1991 U.S. DIST. LEXIS 16427

LEONARD WEINSTEIN and SYLVIA WEINSTEIN, Plaintiffs, v. ROBERT A. CARRANE; CARRANE, NEWMAN & FREIFELD, an Illinois general partnership; ALBERT J. LABUNSKI, d/b/a CEDAR REALTY COMPANY, an Illinois entity and its unknown owners and others; and FIRST SAVINGS & LOAN ASSOCIATION OF SOUTH HOLLAND, an Illinois corporation; Defendants

No. 90 C 1190

UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

1991 U.S. Dist. LEXIS 16427

November 6, 1991
November 6, 1991, Filed

JUDGES: [*1] Harry D. Leinenweber, United States District Judge.

OPINION BY: LEINENWEBER

OPINION

*MEMORANDUM OPINION AND ORDER*

The court has before it two motions by two defendants. The court will consider both motions in this Memorandum Opinion.

FACTS

Plaintiffs, Leonard and Sylvia Weinstein (the "Weinsteins"), met defendant, Robert A. Carrane ("Carrane"), in 1970. Thereafter, plaintiffs used Carrane as their attorney and had him handle their real estate investments. Carrane managed the commercial properties acquired by the Weinsteins and hired defendant Cedar Realty Company ("Cedar Realty") to assist in managing the properties. Cedar Realty is owned by defendant Albert J. LaBunski ("LaBunski"). In 1976 Carrane arranged for the Weinsteins to become beneficiaries of three land trusts at the Cosmopolitan National Bank (the "Cosmopolitan trusts"). The trusts held title to property known as 109 West Hubbard Street and 414, 416, 418, and 420 North Clark Street in Chicago, Illinois (the "Clark/Hubbard property").

According to the complaint, Carrane advised the Weinsteins in 1985 to consolidate the three land trusts into one. The Weinsteins authorized Carrane to make the transfers. Carrane mailed a trust agreement with [*2] American National Bank & Trust Company of Chicago ("American National") to the Weinsteins. Carrane also mailed letters of direction and assignment to Sylvia Weinstein to sign. These letters instructed that title to the Cosmopolitan trusts be conveyed to a nominee, who would then transfer title to American National. Sylvia Weinstein, the sole beneficiary of the trust at this time, signed the letters of direction. Carrane, after receiving the letters of direction, allegedly instructed the nominee to transfer title to trust No. 65523, of which he allegedly was the beneficiary, rather than to trust No. 65970.

Carrane, thereafter, allegedly obtained a $ 500,000 loan from the Water Tower Bank, securing it with a trust deed to trust No. 65523. In order to pay off this loan, the complaint states that Carrane obtained a $ 700,000 loan from defendant First Savings & Loan Association of South Holland ("First Savings") in 1987. Carrane directed trust No. 65523 to execute a mortgage on the Clark/Hubbard property to secure the loan. The Water Tower Bank released its interest in the property after the First Savings disbursement. When applying for the loan, Carrane allegedly submitted a statement [*3] to First Savings claiming that he owned a 30 percent equitable interest in the property, then later submitted another statement asserting he had 100 percent interest in the trust. First Savings had previously given a mortgage of $ 330,000 on the property sometime between 1971 and 1977, for which it had obtained personal guaranties from Leonard Weinstein and Carrane.

Carrane allegedly sold some of the property to Nicholas A. Karris ("Karris"), the chairman and principal shareholder of the Water Tower Bank. The date of the sales contract is the date on which the Water Tower

Case 1:08-cv-00502   Document 11-4   Filed 03/24/2008   Page 3 of 5

Page 2
1991 U.S. Dist. LEXIS 16427, *

Bank loan was made to Carrane. Under this sales contract, Cedar Realty (LaBunski) was to share in a 5 percent broker's commission on the sale.

Plaintiffs' Count XII seeks rescission of the First Savings mortgage on the Clark/Hubbard property. Count XIII seeks to quiet title in the land trustee. Count XIV seeks to impose a constructive trust on all monies which the Weinsteins paid to Carrane and on commissions paid to Cedar Realty for the sale or leasing of the properties.

First Savings moves for judgment on the pleadings as to Counts XII and XIII. LaBunski moves to dismiss Count XIV.

DISCUSSION

I. First Savings' [*4] Motion for Judgment on the Pleadings

Any party may move for judgment on the pleadings once the pleadings are closed. *Fed.R.Civ.P. 12(c)*. In this case, however, the pleadings are not closed as First Savings submitted its motion in lieu of an answer. While a motion for judgment on the pleadings may not be filed before the answer, such a motion may be treated as a motion to dismiss. *Geltman v. Verity, 716 F.Supp. 491, 492 (D. Colo. 1989)*. The legal standard is then the same as for a *Rule 12(b)(6)* motion: to grant the motion it must appear beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.

A. Local Rule 12

Plaintiffs argue that the court must deny this motion as it violates Local Rule 12. Plaintiffs rely on *In re Conticommodity Services, Inc., Secur. Litigation, 733 F.Supp. 1555, 1571 (N.D. Ill. 1990)*, in which the movant failed to comply with Local Rule 12(l) and 12(m) and was criticized by the court for this. The court in that case, however, considered the motion, electing not to deny on this technical basis. This court, too, elects not to deny the motion on procedural grounds [*5] alone.

B. Counts XII and XIII

Plaintiffs allege that First Savings knew, or should have known, that Leonard Weinstein had an interest in the Clark/Hubbard property and was, therefore, improperly mortgaged.

A bona fide mortgagee is protected from claims of which it has no notice. Plaintiffs must be able to defeat First Savings' contention that it acquired an interest for valuable consideration without notice of another's adverse interest. *In re Ehrlich, 59 Bankr. 646, 650 (Bankr. N.D. Ill. 1986)*. Plaintiffs must show that First Savings had knowledge of inconsistencies with the claims of ownership by the record owner. See *Burnex Oil Co. v. Floyd, 106 Ill.App.2d 16, 245 N.E.2d 539, 544 (1969)*.

First Savings acquired its interest for valuable consideration, the $ 700,000 loan. Plaintiffs do not allege that First Savings had actual knowledge of their interest in the property. They do not allege that First Savings had record notice; their interest in the property was not recorded and title was held by American National trust No. 65523 at the time of the 1987 loan.

Plaintiffs claim only that First Savings had inquiry notice. Inquiry notice [*6] is the knowledge the law imputes to the purchaser of an interest in real property when a duty of inquiry arises. The basis of plaintiffs' allegation is that in 1971, First Savings granted a mortgage on this property for which it received a personal guarantee from Leonard Weinstein. Plaintiffs claim this should have put First Savings on inquiry notice that Leonard Weinstein had an interest in the property. Not every guarantor of a loan, however, has an interest in the real property which is the security for the loan.

Inquiry notice cannot be used against a mortgagee to impute knowledge of a prior beneficiary's interests. *In re Ehrlich, 59 Bankr. at 650*. At the time of the first mortgage for which Leonard Weinstein had given his personal guarantee, title to the property was held by LaSalle National Bank as Trustee. The records in 1985, at the time Carrane sought to mortgage the property, revealed only that title had since then been conveyed through nominees to the Cosmopolitan land trusts and then to American National trust No. 65523. The record did not indicate the Weinsteins' alleged connection to the property. Because the property had been conveyed since the first [*7] mortgage, the court cannot find First Savings was on notice that Leonard Weinstein had an interest in the property. Moreover, plaintiffs admit that at the time of the mortgage, Leonard Weinstein did not have an interest in the property; Sylvia Weinstein was the sole beneficiary of the Cosmopolitan trusts. Plaintiffs have not alleged facts on which the court could find First Savings had inquiry notice.

Plaintiffs contend that First Saving's naming of Leonard Weinstein as a defendant in a foreclosure action on the loan in 1977 indicates it was aware of his interest in the property. This argument fails for the reasons stated above. It is logical for a bank to name a guarantor of a loan in a suit for foreclosure and for a guarantor to satisfy a loan for which he is personally liable. Neither action indicates anything about the bank's knowledge of the guarantor's interest in the real property used as security for the loan.

There was nothing on the face of the transaction which could have given First Savings the duty of inquiry. All deeds were properly executed and notarized, suffi-

Case 1:08-cv-00502    Document 11-4    Filed 03/24/2008    Page 4 of 5

Page 3
1991 U.S. Dist. LEXIS 16427, *

ciently described the property, and were for adequate consideration. The alleged inconsistencies plaintiffs [*8] point to in the mortgage documents submitted by Carrane do not give rise to an inference that First Savings had notice of the Weinsteins' alleged interest. Carrane's indication in one financial statement that he had a 30% interest in the land trust that owned the Clark/Hubbard property in no way gave rise to the inference he did not have authority to direct the land trustee to secure a mortgage. More to the point, the fact that Carrane indicated at a later time he had 100% interest in the trust is not inconsistent.

Plaintiffs' argument also fails because financial institutions are entitled to rely on a land trustee's Warranty of Authority. The mortgage to the property reads "this Mortgage is executed by the undersigned, not personally but as Trustee . . . and the undersigned hereby warrants that it possesses full power and authority to execute this instrument." The Deed in Trust to American National trust No. 65523 states that no party to whom real estate in question is mortgaged shall be obligated to inquire into the authority of any act of the trustee, nor be obliged or privileged to inquire into any terms of said trust agreement. First Savings was entitled to rely on the [*9] deed vesting title to the property in the mortgagor, American National, trust No. 65523, and was precluded from inquiring into the identity of the trust beneficiary. This kind of clause was upheld in *Chicago Federal Savings & Loan Ass'n v. Cacciatore, 25 Ill.2d 535, 185 N.E.2d 670, 674 (1962)*, where such clauses were seen as:

a means of enabling third parties to deal with real estate in reliance upon the record title. of the land trustee. Large scale real estate developments by land trusts have been made possible only because the financing sources can rely upon the sole security of the trustee's title to the real estate.

Even had First Savings inquired into the identity of the land trust beneficiary, the beneficiary was Carrane himself. There was no indication on record anywhere that the Weinsteins had an ownership interest in the property. In fact, plaintiffs never had an ownership interest in the Clark/Hubbard property. Title to the property was held by American National trust No. 65523, and prior to that by the three Cosmopolitan trusts of which Sylvia Weinstein was a beneficiary. It is well established that the beneficiary's interest in an Illinois [*10] land trust is personal property, not real property. *Chicago Federal Savings & Loan Ass'n, 185 N.E.2d at 674*. (a "beneficial interest is personal property as distinguished from real estate by the terms of the recorded trust deed, the trust itself, and by settled Illinois law"); *In re Estate of Alpert, 95 Ill.2d 377, 447 N.E.2d 796, 798 (1983)*.

First Savings could not have been aware of any adverse claims when it became the mortgagee of the property.

A bona fide mortgagee cannot be made to suffer the consequences of latent defects that it could not suspect existed and could never have uncovered even by the most thorough of inquiries. If any party was negligent in conducting its affairs, it was plaintiffs, who did not seek to verify the trust number nor the identity of the beneficiary of this trust until four years after Sylvia Weinstein directed Carrane to execute the transfer to American National, two years after Carrane mortgaged the property to First Savings. Plaintiffs' Counts XII and KIII are dismissed for failure to state a cause of action.

II. LaBunski's Motion to Dismiss Count XV, now Count XIV of the Second Amended Complaint

[*11] LaBunski is the owner of Cedar Realty, a company engaged in managing and selling real estate. Cedar Realty was hired by Carrane to help manage the Clark/Hubbard property in 1984. Plaintiffs seek to have a constructive trust imposed on commissions paid to Cedar Realty for the sale or leasing of the Clark/Hubbard property.

A constructive trust is imposed by the courts to prevent unjust enrichment where a party receives property or money which, in equity, it should not be entitled to keep. *Village of Wheeling v. Stavros, 89 Ill.App.3d 450, 411 N.E.2d 1067 (1980)*. A constructive trust will not be imposed, however, unless:

the complaint makes specific allegations of wrongdoing . . . such as fraud, breach of fiduciary duty, duress, coercion or mistake. Furthermore, the grounds for imposing a constructive trust must be so clear, convincing, strong and unequivocal as to lead to but one conclusion.

*Suttles v. Vogel, 126 Ill.2d 186, 533 N.E.2d 901, 905 (1988)*. Plaintiffs make no specific allegations of wrongdoing on the part of defendant Cedar Realty. They allege only that Cedar Realty managed the property and was [*12] paid for its services, and that it was to share in a 5 percent broker's fee for the sale of the property by Carrane to Karris. There is no allegation that LaBunski breached any fiduciary duty or that he did not earn the money he was paid for his services or the broker's fee. There is no allegation that he actively or knowingly participated in any wrongdoing as is required for the imposition of a constructive trust. Even as a subagent of Carrane, LaBunski cannot be held liable if he was unaware of Carrane's alleged wrongdoing. Carrane was, in fact, the beneficiary of the land trust holding title to the properties during most of this time. None of the alleged facts indicate that LaBunski was ever aware of the Weinsteins' interests. Plaintiffs do not allege any facts pointing to

Case 1:08-cv-00502   Document 11-4   Filed 03/24/2008   Page 5 of 5

Page 4
1991 U.S. Dist. LEXIS 16427, *

"constructive fraud" in any way. Where plaintiffs fail to show any facts underlying their claim, even when considered in the light most favorable to the plaintiffs, dismissal pursuant to a Rule 12(b)(6) motion is justified. *Strauss v. City of Chicago, 760 F.2d 765 (7th Cir. 1985); Briscoe v. La Hue, 663 F.2d 713, 723 (7th Cir. 1981).* Defendant's motion to dismiss Count [*13] XIV of the Second Amended Complaint against LaBunski is granted.

CONCLUSION

The motion of defendant First Savings for judgment on the pleadings as to Counts XII and XIII is granted and the motion to dismiss Count XIV against LaBunski is granted.

IT IS SO ORDERED.