UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| TRUSTEES OF THE SOFT DRINK INDUSTRY - LOCAL UNION NO. 744 PENSION FUND,<br><br>Plaintiff,<br><br>v.<br><br>ROYAL CROWN BOTTLING COMPANY OF CHICAGO, a Delaware Corporation<br><br>Defendants. | Case No. 08 c 502<br>Judge Leinenweber<br>Magistrate Judge Nolan |

**PLAINTIFF'S RESPONSE TO DEFENDANT'S
MOTION TO DISMISS COUNT II OF COMPLAINT**

Plaintiff Trustees of the Soft Drink Industry - Local Union No. 744 Pension Fund (hereinafter, "Pension Fund"), submit this Response to Defendant Royal Crown Bottling Company of Chicago's (hereinafter, "Defendant" or "Royal Crown") motion to dismiss Count II of Plaintiff's Complaint.

This dispute centers on the withdrawal liability assessed by the Pension Fund against Royal Crown. Count II of the Pension Fund's Complaint seeks to impose a constructive trust over assets of Royal Crown in the sum $4,532,430.00 to ensure payment of Royal Crown's withdrawal liability. Royal Crown disputes the Pension Fund's right to seek a constructive trust in this instance and requests that Count II be dismissed. Royal Crown asserts that, because it has made timely withdrawal liability payments, the Pension Fund has no legal basis or a "good conscience" claim to seek the imposition of a constructive trust on the assets of Royal Crown. Moreover, Royal Crown claims that the Pension Fund is attempting to leapfrog over other potential creditors.

The facts summarized in Defendant's Memorandum of Law in Support of its Motion to Dismiss Count II are undisputed, as those facts have been recited in the Complaint. Additionally, Royal Crown is an out-of-state corporation incorporated in the state of Delaware and transacting business in Chicago, Illinois. (Compl. ¶8.) Once it was assessed with withdrawal liability by the Pension Fund, Royal Crown chose to pay its withdrawal liability in quarterly payments. The eighty (80) quarterly payments over 20 years would result in a cumulative payment of $5,179,920.00. (Compl. ¶18.) When Royal Crown ceased its business operations subject to the CBA in 2005, it began selling its assets. (Compl. ¶14.)

LEGAL STANDARD

A Rule 12(b)(6) motion tests the sufficiency of a complaint, not the merits of the case. Autry v. Northwest Premium Srvs., Inc., 144 F.3d 1037, 1039 (7th Cir. 1998). A court must accept all well pleaded factual allegations in the complaint as true, drawing all reasonable inferences from those facts in Plaintiff's favor. Cleveland v. Rotman, 297 F.3d 569, 571 (7th Cir. 2002). A court should not grant a defendant's motion to dismiss unless no relief could be granted under any set of facts that could be proven, consistent with the allegations. Nance v. Vieregge, 147 F.3d 589, 590 (7th Cir. 1998).

Defendant includes a section in its brief entitled "Procedural History," in which it introduces new facts and exhibits not found or referred to in the Complaint. Such facts and exhibits may not properly be considered in a motion to dismiss. See Levenstein v. Salafsky, 164 F.3d 345, 347 (7th Cir. 1998) ("Documents attached to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to his claim.") The facts and exhibits cited by Defendant are not contained nor referenced in the Complaint. Accordingly, the Pension Fund

requests that these new facts and exhibits be stricken from Defendant's Memorandum of Law in Support of its Motion to Dismiss.

ANALYSIS

The Pension Fund seeks a constructive trust over the assets of Royal Crown. A constructive trust is necessary in order preserve the assets of Royal Crown to pay its withdrawal liability. The Multi-Employer Pension Plan Amendments Act (MPPAA) of 1980 was enacted in order to support the public policy goal of maintaining the funding of multiemployer pension funds. See Central States v. Gerber Truck, 870 F.2d 1148, 1152-1153 (7th Cir. 1989). "These costs [resulting from failure to make required payments] detract from the ability of plans to formulate or meet funding standards and adversely affect the financial health of plans." Id., at 1153.

In a case such as the present, where withdrawal liability has been assessed, there is a statutory framework in place in ERISA, which directs the parties how any objection to the imposition of withdrawal liability are to be handled. The MPPAA (Section 1399(c)(2)) calls on the employer to pay, notwithstanding contentions that may prevail in the end. Trustees of Chicago Truck Drivers v. Central Transport, Inc., 935 F.2d 114, 118 (7th Cir. 1991). Congress gave the pension funds the right to hold the stakes while arbitrators resolve the disputes. Id. A pension trust fund would bear a substantial risk if the employer were to hold the stakes pending final resolution, the employer faces no corresponding risk if the pension fund holds the stakes. Id. "The employers most likely to feel the pinch of interim payments are those skating closest to the edge, posing the greatest risk to the plans if payment is deferred. Other employers, not at risk of insolvency, may distribute assets during the interim, making collection difficult even if the

pension fund prevails.  In either case, the trust is left with the obligation to the workers without a corresponding source of funds.  Much of pension law is designed to alleviate this risk. "  Id.  The Seventh Circuit's  Gerber Truck and Central Transport opinions demonstrate that there is a firm public policy favoring the protection of the financial security of multiemployer pension funds.

Other courts have agreed with the Seventh Circuit.  In Galgay v. Beaverbrook Coal Co., 105 F3d 137, 140 (3rd Cir. 1997), the court stated that the traditional test for a preliminary injunction is not applicable in the MPPAA context.  Congress has effectively determined that pension funds will be irreparably harmed unless employers are enjoined to make interim payments while litigation proceeds.  Id.  By enacting the withdrawal liability provisions, Congress has concluded that the uninterrupted flow of payments to pension funds is important in itself and that the ultimate recovery of payments will not suffice to make the Fund whole.  Id. "Congress has likewise determined that neither party's probability of success in litigation is relevant: interim payments must be made regardless." Id.  While this case does not deal with a request for a constructive trust, it demonstrates the law's protective approach to pension funds.

An analogous case that does treat the issue of constructive trust is Trustees of the Suburban Teamsters of Northern Illinois Pension Fund v. Harry w. Kuhn, et al, 05 C 1343 (N.D. Ill. March 30, 2005).  In Kuhn, the employer notified the union that it was permanently closing its facilities and it engaged an auction house to sell all of its equipment. The pension fund assessed withdrawal liability and informed Kuhn of the amount the amount of the demand and of a payment schedule.  Kuhn's payment was due March 1; however, on March 2, it had not made the initial payment and the pension fund sued.  The court held that the pension fund would be irreparably harmed and was likely to prevail on the merits; the court accordingly issued a

temporary restraining order. The court's order also imposed a constructive trust on the assets of Kuhn to guarantee a prompt and timely payment of the withdrawal liability.

A constructive trust is appropriate in this case. Although Royal Crown has not yet missed a quarterly payment, a constructive trust is warranted because Royal Crown has closed its facility and ceased operating and has started to sell its assets. A constructive trust will prevent the dissipation of the assets and reduce the threat that the Pension Fund will be left with a large unpaid liability.

Defendant cites Admin. Comm. of the Wal-Mart Stores, Inc. v. Varco, 338 F.3d 680, 687 (7th Cir. 2003), for the proposition that the Pension Fund has not identified any special claim to the specific assets at issue and it therefore cannot seek a constructive trust in this case. However, that case is distinguishable as it involved the settlement of a personal injury lawsuit and the proceeds of that settlement that were to be paid to the health insurance fund pursuant to a medical lien. That case did not involve the closing of a facility and the dissipation of the employer's assets through a sale of the employer's assets, nor did it involve a multiemployer pension fund which, as discussed above, is a type of claimant that is arguably favored by the law.

CONCLUSION

The Pension Fund respectfully asks the Court to deny Royal Crown's motion to dismiss Count II, and requests that the Court impose a constructive trust over the sale of any assets of Royal Crown in order to ensure that the payment of its withdrawal liability continues uninterrupted.

        Respectfully submitted,

        Trustees of the Soft Drink Industry–Local Union
        No. 744 Pension Fund


By:   <u>/s/Librado Arreola</u>
       Attorney for Plaintiff


Librado Arreola
ILARDC #6203323
LA@ULAW.COM
Barry G. Collins
ASHER, GITTLER, GREENFIELD
 & D'ALBA, LTD.
200 W. Jackson Blvd., Suite 1900
Chicago, IL 60606
(312) 263-1500
(312) 236-1520 FAX