**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| TRUSTEES OF THE SOFT DRINK INDUSTRY - LOCAL UNION NO. 744 PENSION FUND, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No. 08 C 0502 |
| ROYAL CROWN BOTTLING COMPANY OF CHICAGO, A Tennessee Corporation, | ) ) ) | Judge Leinenweber Mag. Judge Nolan |
| Defendant. | ) ) | |

## MEMORANDUM IN SUPPORT OF PLAINTIFF, TRUSTEES OF THE SOFT DRINK INDUSTRY, LOCAL UNION NO. 744 PENSION FUND'S MOTION FOR JUDGMENT ON THE PLEADINGS OR FOR SUMMARY JUDGMENT

This action was brought by Plaintiff, Trustees of the Soft Drink Industry, Local Union No. 744 Pension Fund ("Fund"), seeking a Declaratory Judgment regarding Defendant Royal Crown Bottling Company of Chicago's ("Royal Crown") request to the American Arbitration Association to arbitrate the withdrawal liability assessed against it by the Fund. The Fund asserts that Royal Crown's arbitration request is untimely.

The Fund seeks declaratory relief pursuant to the Declaratory Judgment Act, 28 U.S.C. §§2201 and 2202, and injunctive relief pursuant to the Employee Retirement Security Act ("ERISA"), 29 U.S.C. §§1132(a)(3) and 1451(a)(1). The Fund is without an adequate remedy at law and will suffer immediate, continuing and irreconcilable injury and damage unless Royal Crown is ordered to withdraw its arbitration request and to cease all proceedings to arbitrate or challenge the withdrawal liability assessed against Royal Crown by the Fund.

**Facts**

Royal Crown was, at all relevant times, party to a Collective Bargaining Agreement

("CBA") and Amended Agreement and Declaration of Trust ("Trust Agreement") executed with

Teamsters Local Union No. 744 ("Local 744"). (Statement in Support of Pension Fund's Motion

for Summary Judgment, paragraph 5, hereinafter "Fund's Statement par. 5".) Royal Crown was

required to make contributions to the Fund on behalf of certain of its employees pursuant to the

CBA and Trust Agreement. (Fund's Statement par. 6.) However, Royal Crown ceased making

any contributions to the Fund during the 2005 plan year and began selling its assets. (Fund's

Statement par. 10-11.) Consequently, Royal Crown effected a "complete withdrawal" from the

Fund pursuant to Section 4203 of ERISA, 29 U.S.C. §1383. (Fund's Statement par. 11.) As a

result, Royal Crown incurred "withdrawal liability" to the Pension Fund in the amount of

$3,064,114.00, as determined under Section 4201(b) of ERISA, 29 U.S.C. §1381(b). (Fund's

Statement par. 12.)

On or about September 12, 2005, Royal Crown received a notice and demand from the

Fund for payment of withdrawal liability, in accordance with Sections 4202(2) and 4219(b)(1) of

ERISA, 29 U.S.C. §§1382(2) and 1399(b)(1). (Fund's Statement par. 13.) The September 12,

2005, notice from the Pension Fund notified Royal Crown that its withdrawal liability obligation

could be discharged by a single lump sum payment of $3,064,114.00, or by eighty (80) quarterly

payments of $64,749.00, beginning on September 30, 2005, with a final payment due on June 30,

2025. (Fund's Statement par. 14.) The eighty (80) quarterly payments over 20 years would

result in a cumulative payment of $5,179,920.00. (Fund's Statement par. 15.)

On December 9, 2005, Royal Crown, through its counsel, requested a review of the

Pension Fund's withdrawal liability determination in accordance with ERISA Section 4219(b)(2)(A). (Fund's Statement par. 16.) On May 22, 2006, the Pension Fund responded to Royal Crown's request for a review and advised Royal Crown that the Trustees of the Pension Fund had declined to reduce Royal Crown's withdrawal liability because the documentation provided by Royal Crown was not sufficient to support its position. (Fund's Statement par. 17.) On June 27, 2006, Royal Crown provided the Pension Fund with additional financial information. (Fund's Statement par. 18.) On November 6, 2006, the Pension Fund again advised Royal Crown that it would not make any adjustment to the withdrawal liability assessment because Royal Crown had not provided documentation sufficient to support its position. (Fund's Statement par. 19.)

On January 4, 2007, Royal Crown submitted a request for arbitration of the withdrawal liability dispute to the American Arbitration Association ("AAA"). (Fund's Statement par. 20.) On January 8, 2007, the Pension Fund responded to Royal Crown's request for arbitration, advising AAA and Royal Crown that Royal Crown's request to arbitrate the matter was untimely under Section 4221(a)(1) of ERISA. (Fund's Statement par. 21.) On January 10, 2007, AAA sent the parties a letter acknowledging Royal Crown's request for arbitration and providing the parties with a list of arbitrators. (Fund's Statement par. 22.) On January 24, 2007, the Pension Fund again advised AAA that Royal Crown's request to arbitrate was untimely and the matter was therefore not subject to arbitration. (Fund's Statement par. 23.)

On March 8, 2007, Royal Crown responded to the Pension Fund's letter of January 24, 2007, further pressing its opinion that the dispute regarding the timeliness of the request to arbitrate is a matter to be resolved by the arbitrator and not the courts. (Fund's Statement

par. 24.)  On March 23, 2007, the Pension Fund responded to Royal Crown's March 8, 2007, letter and again advised AAA that Royal Crown's request to arbitrate was untimely and the matter was therefore not subject to arbitration.  (Fund's Statement par. 25.)  In a letter dated March 27, 2007, AAA advised the Pension Fund that it had until April 6, 2007, to select an arbitrator and to raise the disputed issue before the arbitrator.  (Fund's Statement par. 26.)

In a letter dated April 6, 2007,  Royal Crown advised AAA that it wanted to stay the arbitral proceedings pending settlement discussion between the parties.  (Fund's Statement par. 27.)  In a subsequent letter dated December 13, 2007, Royal Crown advised AAA that it intended to proceed with arbitration.  (Fund's Statement par. 28.)  In a letter dated December 13, 2007, AAA advised the Pension Fund that the Pension Fund had until January 4, 2008, to select an arbitrator and to raise the disputed issue before the arbitrator.  (Fund's Statement par. 29.)

In a letter dated January 8, 2008, AAA advised the Pension Fund that the Pension Fund now had until January 10, 2008, to select an arbitrator and to raise the disputed issue before the arbitrator.  (Fund's Statement par. 30.)  AAA advised that the Pension Fund's failure to select an arbitrator would result in a selection being made by AAA.  (Fund's Statement par. 31.)  In a letter dated January 14, 2008, the Pension Fund advised AAA that, absent an agreement from Royal Crown to stay the selection of an arbitrator pending this action, the Pension Fund would include AAA as a Defendant in order to enjoin its arbitrator selection procedures.  (Fund's Statement par. 32.)  On January 21, 2008, Royal Crown agreed to stay the arbitration selection procedures with AAA, pending a ruling by this Court as to the arbitrability of this matter.  (Fund's Statement par. 33.)

**Argument**

**A.  Royal Crown's arbitration request was untimely.**

Royal Crown failed to initiate arbitration within the time period specified in ERISA

Section 4221(a)(1).  Courts have held that, where an employer fails to arbitrate a dispute

regarding its withdrawal liability assessment on a timely basis, Section 4221(b)(1) mandates that

the amounts demanded by the fund become due and owing on the schedule set forth by the fund.

*Robbins v. Admiral Merchants Motor Freight, Inc.*, 846 F.2d 1054, 1056-1057 (7th Cir. 1988);

*see also Central States, Southeast and Southwest Areas Pension Fund v. MGS Transportation,*

*Inc.*, 661 F.Supp. 54, 55 (N.D. Ill. 1987) (holding that an employer who failed to seek arbitration

within the time required forfeited its right to challenge the withdrawal liability assessment).

Section 4221(a)(1) of ERISA (29 U.S.C. §1401(a)(1)) reads:

> Any dispute between an employer and the plan sponsor of a multiemployer plan
> concerning a determination made under sections 4201 through 4219 shall be
> resolved through arbitration.  Either party may initiate the arbitration proceeding
> within a 60-day period after the earlier of –
>
>> (A) the date of notification to the employer under section
>> 4219(b)(2)(B), or
>>
>> (B) 120 days after the date of the employer's request under section
>> 4219(b)(2)(A).

While this formulation is simple enough, its meaning is crystal clear when we identify the

statutory references.  (The following quote also adds U.S. Code cites.)

> Any dispute between an employer and the plan sponsor of a multiemployer plan
> concerning a determination made under sections 4201 through 4219 [29 U.S.C.
> §§1381 through 1399] shall be resolved through arbitration.  Either party may
> initiate the arbitration proceeding within a 60-day period after *the earlier of –*
>
>> (A) the date of notification to the employer under section
>> 4219(b)(2)(B) [29 U.S.C. §1399(b)(2)(B); the date the plan

> sponsor notifies the employer of its decision after a review], or

> (B) 120 days after the date of the employer's request under section
> 4219(b)(2)(A) [29 U.S.C. §1399(b)(2)(A); the date of the
> employer's request for review].  (Emphasis added.)

The statute therefore contemplates two possibilities: (1) the employer requests a review under

Section 4219(b)(2)(A) and the pension fund makes a determination within 120 days of the

employer's request, in which case the arbitration deadline is 60 days after the pension fund's

determination; or (2) the employer requests a review under Section 4219(b)(2)(A) but the

pension fund does <u>not</u> make a determination within 120 days, in which case the arbitration

deadline is 180 days (120 plus 60) after the date of the employer's request for a review.  Note

that the review procedure in Section 4219(b) does not fix a deadline for a plan sponsor's

determination of an employer's request for a review.  Nevertheless, because the arbitration

deadline is based on the <u>earlier</u> of the two dates, it is clear that Congress intended that disputes

move into the arbitration arena within 180 days, even if the plan sponsor is still mulling over the

employer's review request.  The last sentence of Section 4221(a)(1) also refers to a 180-day limit,

although that limit (for a joint arbitration request, which did not occur in the instant case) is

measured from the plan sponsor's initial assessment of withdrawal liability.

Once the Fund was aware that Royal Crown had effected a complete withdrawal from the

plan and that it was subject to withdrawal liability, it acted in accordance with the statutory

mandate and notified Royal Crown of the withdrawal liability assessment.  That occurred on

September 12, 2005.  (See Exhibit A.)  On December 9, 2005, and within the 90-day period

allowed by Section 4219(b)(2), Royal Crown requested a review of the Fund's withdrawal

liability determination.  Royal Crown's request for review started the clock running for a request

6

to initiate arbitration, and the deadline under Section 4221(a)(1) would be June 7, 2006 (180 days), unless the Fund advised Royal Crown of its determination prior to April 8, 2006 (120 days), in which case the deadline would have been 60 days after the Fund's determination.

The Fund responded to Royal Crown on May 22, 2006, advising that Royal Crown had failed to establish that it was entitled to a reduction of withdrawal liability. (See Exhibit C.) Although Royal Crown could have made a timely arbitration demand at that point, it chose to continue the debate with the Trustees of the Fund and, on June 27, 2006, Royal Crown submitted additional financial information to the Fund. (See Exhibit D.) The Fund reviewed and responded to that additional financial information on November 6, 2006, advising that the withdrawal liability assessment would not be reduced. (See Exhibit E.)

Under the statute as outlined above, Royal Crown needed to initiate arbitration of its dispute, at the latest, by June 7, 2006. Royal Crown initiated the arbitration on January 4, 2007, nearly seven months after the statutorily prescribed deadline. The case law on this subject is unrelenting and uniform: if an employer fails to timely initiate arbitration, the withdrawal liability as assessed by the pension fund is due and owing. *See. e.g., Robbins v. Admiral Merchants Motor Freight, Inc.*, 846 F.2d 1054, 1057 (7th Cir. 1988); *Robbins v. Chipman Trucking, Inc.*, 866 F.2d 899, 902 (7th Cir. 1989); *Central States, Southeast and Southwest Areas Pension Fund v. MGS Transportation, Inc.*, 661 F.Supp. 54, 55 (N.D. Ill. 1987). The *Chipman* decision is particularly instructive, since the sequence of events was similar to that in the case at bar and the court parses the statutory time limit exactly as described above. The employer in *Chipman* requested a review of its withdrawal liability assessment on April 9 and May 8, 1984. 866 F.2d at 901. The Court found that the arbitration deadline was October 6, 1984, a date that

was 60 days after August 7, 1984, which was 120 days after April 9, 1984. *Id.* Also like the case at bar, the pension fund in *Chipman* had not made a determination on the employer's review request by the 120th day, but the pension fund responded on September 26, 1984, before the 180th day. *Id.*

**B.   The Issue of Arbitrability Is to Be Decided by the Court, Not the Arbitrator.**

Royal Crown claims that the decision on whether its arbitration request was untimely is not for this Court to decide, but rather for the arbitrator to determine. However, the court in *Robbins v. Chipman Trucking, Inc.*, 866 F.2d 899 (7th Cir. 1989), rejected this very argument. 866 F.2d at 902. The Court sensibly observed that,

> [I]f the question of whether arbitration was waived remained a question for the arbitrator, the time limits in the statute would be toothless; employers could ignore the 120-day statutory limit for initiating arbitration and then move to dismiss the pension fund's subsequent collection lawsuit, claiming that the matter had to be returned to the arbitrator for a determination of whether the failure to file constituted waiver. Our decision allows the statutory time limit to retain its bite.

*Id.*

The "bite" of the statute is that, when an employer fails to initiate arbitration as required, the employer waives its right to dispute the plan sponsor's assessment of withdrawal liability. *Admiral Merchants Motor Freight, Inc.*, *supra,* at 1057. The court in *Admiral* stated, "The result is harsh but [the employer] cannot claim to have been unaware of the ramification of its failure to comply with the statute." Therefore, Royal Crown's untimely request to arbitrate means that it has waived any defenses it may have raised to challenge its withdrawal liability. *Chipman Trucking, Inc.*, *supra,* at 902.

**C.   Royal Crown's Objection to the Withdrawal Liability Assessment Cannot Be Raised in Federal Court.**

Royal Crown's sole objection to the Fund's assessment of withdrawal liability, as presented in Royal Crown's December 9, 2005, request for review, was that the withdrawal liability assessment should have been limited under ERISA Section 4225 (29 U.S.C. §1405). (See Exhibit B.)  While the Fund is not aware of any Seventh Circuit authority on this question, the Court of Appeals for the Fourth Circuit has ruled that a dispute regarding the applicability of the Section 4225 limitation is subject to ERISA's mandatory arbitration provisions and, absent arbitration, cannot be raised by the employer for the first time in Federal court.  *See Board of Trustees, Sheet Metal Workers National Pension Fund v. BSS Services, Inc.*, 469 F.3d 369, 376 (4th Cir. 2006).  Accordingly, the court found that the employer's Section 4224 defense, not having been raised in a timely arbitration, was waived.  *Id.*

**D.   The Deadline to Request Arbitration Was Not Tolled.**

ERISA Section 4221 does not provide for equitable tolling of the arbitration deadline. However, the Court of Appeals for the Seventh Circuit has carved out a narrow exception to the general rule that an employer waives its right to challenge withdrawal liability once the arbitration deadline has passed.  In *Banner Industries, Inc., v. Central States, Southeast and Southwest Areas Pension Fund*, 875 F. 2d 1285 (7th Cir. 1989) cert den. *Central States, Southeast and Southwest Areas Pension Fund v. Banner Industries, Inc.,* 493 U.S. 1003, 110 S.Ct. 563, 107 L.Ed.ed 558 (1989), the court held that the "strict forfeiture rule" (referring to waiver of defenses) is relaxed when the employer has "moved decisively to present the issue in court within the statutory time period for arbitration."  875 F. 2d at 1291, 1293.  The court further refined the equitable tolling rule in *Trustees of the Chicago Truck Drivers, Helpers and*

9

*Warehouse Workers Union (Independent) Pension Fund v. Central Transport, Inc.*, 888 F. 2d 1161 (7th Cir. 1989), where the court, referring to the *Banner* decision, stated, "In essence, we determined that actively pursuing a legitimate issue of statutory construction *in federal court* will toll the period during which arbitration must begin." *Id.* at 1164 (emphasis added).

The standard is clear: active pursuit of a legitimate defense in Federal court tolls the arbitration deadline.  In the present case, if Royal Crown claims that the arbitration deadline should have been tolled, it cannot show that it sought recourse in federal court.  It can only point to its letter of June 27, 2006, written after the arbitration deadline had passed, which asked the Fund to review additional documentation in support of its claim.  (See Exhibit E.)  The Fund reviewed and responded to those materials (see Exhibit F), but nothing in the Fund's conduct induced Royal Crown to forego initiating arbitration.  Indeed, the Fund's act of responding could not have induced Royal Crown to miss the deadline because the Fund's review and response took place after the June 7, 2006, deadline.

## Conclusion

Accordingly, the Pension Fund requests that its motion be granted and that the Court issue a Declaratory Judgment that Royal Crown's arbitration request was untimely, such that Royal Crown's defenses to the withdrawal liability assessment have been waived, and enjoining Royal Crown from arbitrating the withdrawal liability assessment.

Respectfully submitted,

/s/Barry G. Collins; IL ARDC#: 3126979

/s/ Librado Arreola; IL ARDC#: 6203323

Asher, Gittler, Greenfield & D'Alba, Ltd.
200 West Jackson Blvd., Suite 1900
Chicago, Illinois 60606
(312) 263-1500